UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CHESTER ROBERT FIFE** | **CIV. ACTION NO. 3:22-06141** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The District Court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Chester Fife filed the instant application for Title II Disability Insurance Benefits on October 6, 2020. (Tr. 11, 195-201). Fife, who was 53 years old at the time of the administrative hearing, alleged a disability onset date of July 1, 2018,[1] because of arthritis, shoulder surgery, shaved bone on "rotor" cuff, emphysema, carotid artery stenosis, Morton's neuroma, shingles, hearing loss, anxiety, and neurocognitive disorders. *See* Tr. 239-242. The state agency denied the claims initially on April 16, 2021, and upon reconsideration on August 27, 2021. (Tr. 83-100, 106-108, 130-135, 137-146). Thereafter, Fife requested and received a

---

[1] Fife filed prior applications on August 9, 2018, and June 4, 2019, which were denied at the agency level. *See* Tr. 84 & 65. However, the prior denials apparently did not have preclusive effect because the ALJ found Fife not disabled for the entire period from his July 1, 2018 alleged onset of disability through the date of his decision.

June 2, 2022 hearing before an Administrative Law Judge ("ALJ"). (Tr. 32-62). However, in a June 29, 2022 written decision, the ALJ determined that Fife was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 8-25).

Fife sought review of the adverse decision before the Appeals Council. On October 21, 2022, however, the Appeals Council denied Fife's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On December 7, 2022, Fife filed the instant complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## **Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that,

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or

2

substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C.§ 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step

sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

    (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

    (2)    An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

    (3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

            Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

    (4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

**I.      Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 15). At step two, he found that the claimant suffered severe impairments of degenerative disc disease, degenerative joint disease, and chronic pulmonary disease. (Tr. 15-18).[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 18-19).

**II.     Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[3] except that he can no more than frequently climb, balance,

---

[2] The ALJ determined that the claimant's medically determinable impairments of open angle glaucoma, obstructive sleep apnea, mild neurocognitive disorder, and anxiety disorder were non-severe. *Id*.

[3] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

stoop, kneel, crawl, and reach with the right, dominant upper extremity. (Tr. 19-23). He also is limited to occasional exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. *Id*.

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform his past relevant work. (Tr. 23-24). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual on the alleged disability onset date, but then changed age category to closely approaching advanced age. *Id*. He had at least a high school education, and transferability of skills was not material to the decision. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rules 202.21 and 202.14, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 24. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of housekeeping cleaner, *Dictionary of Occupational Titles* ("DOT") Code # 323.687-014; marker, DOT # 209.587-034; and routing clerk, DOT # 222.687-022, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 24, 57-58).[4]

---

[4] The VE responded that for the housekeeping cleaner, marker, and routing clerk jobs there were 162,000, 129,000, and 41,000 positions available nationwide, respectively. (Tr. 57-58). This

## Analysis

Fife contends that the ALJ erred in his RFC assessment because he failed to properly evaluate the opinion evidence consistent with SSA authority and Fifth Circuit precedent. Specifically, Fife argues that the ALJ should have credited the limitations recognized by the consultative examiners, Philip Sneed, M.D., and Maria Khan, D.O., both of whom opined that Fife could not meet the lifting requirements for work at the light exertional level. Had the ALJ done so, then Fife would have been limited to work at the sedentary exertional level, which would have mandated a finding of disabled under Rule 201.14 of the Guidelines.

Before addressing Fife's argument(s), the court will recite the findings of the various medical opinions, the pertinent regulations regarding medical opinions, and the ALJ's application of same.

### a) Medical Opinions Pertaining to Fife's Physical Impairments[5]

At the request of the state agency, Fife underwent a consultative physical examination with Philip Sneed, M.D., on January 5, 2019. (Tr. 310-313). Fife complained of degenerative arthritis, osteophytosis, bone spurs, cervical spine degeneration, degenerative disc disease, chronic interstitial and pulmonary lung disease, "generation" of acromioclavicular joint with tendinopathy, and Morton's neuroma in the foot. *Id*. He reported severe right foot pain, which had resolved after surgical repair in October 2018. *Id*. He still experienced some right foot numbness that rendered him less steady, but with no falls. *Id*. Fife further complained of right

---

incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

[5] Fife did not challenge the ALJ's assessment of the effects of his mental impairment(s), and, therefore, the court will not discuss that aspect of the Commissioner's decision.

shoulder pain because of bone spurs. *Id*. His scheduled surgery had been delayed because of an abscess. *Id*. He reported severe pain with any movement of the right arm but denied numbness or weakness of the hand. *Id*. Nothing improved his pain. *Id*.

Fife continued to smoke a half pack of cigarettes per day and remained independent with his activities of daily living. *Id*. He exhibited right shoulder pain upon palpation and tenderness of the cervical spine/spinal prominence and thoracic paraspinal muscles. *Id*. He had a full range of motion, but with visible strain because of pain. *Id*. In fact, diaphoresis and tachycardia were noted upon shoulder assessment. *Id*. His gait was rigid and deliberate. *Id*. Moreover, he was able to bend and squat without difficulty. *Id*. He exhibited 5/5 strength in all muscle groups, with adequate fine motor movements, dexterity, and the ability to grasp objects bilaterally. *Id*. However, he had a moderate resting tremor. *Id*.

Dr. Sneed diagnosed right shoulder arthropathy, concern for coronary artery disease, neuroma status post-surgical removal, COPD, tobacco abuse, and carotid artery stenosis. *Id*. He opined that Fife should be able to sit for a full workday and walk and/or stand for a partial workday. *Id*. His ability to lift/carry objects was limited to less than ten pounds in his right arm, secondary to his shoulder pain, which needed surgical repair. *Id*. Nonetheless, Fife retained a normal range of motion in all joints. *Id*.

At the request of the state agency, Fife underwent another consultative physical examination on October 26, 2019, with Maria Kahn, D.O. (Tr. 1089-1093). Fife alleged an inability to work due to "arthritis, right shoulder rotator cuff tear with bone spurs, emphysema, cervical spine degenerative disc disease, and stenosis of the arteries." *Id*. He stated that he was unable to work because he was unable to breathe. *Id*. He reported that he could not lift anything over five pounds for the next six months. *Id*. He last worked in June 2018 but

8

stopped working because of "left" shoulder pain. *Id*. He was able to walk 200 feet before he experienced shortness of breath. *Id*. He stated that he had 50 percent blockage in the artery in his neck, and that his doctor was monitoring it. *Id*. However, he was able to complete all activities of daily living by himself. *Id*. He also was able to perform some household chores and mowed the lawn with a mask. *Id*. He could walk fifteen minutes before needing to rest. *Id*.

Upon examination, Fife had mild diffuse wheezes, but no rales or rhonchi. *Id*. A reducible ventral hernia was noted. *Id*. He had no limitations with grasping or gross or fine manipulation. *Id*. He exhibited 5/5 muscle strength in all four extremities, with a normal gait. *Id*. He was able to squat down and return upright, without difficulty. *Id*.

Dr. Khan diagnosed right shoulder osteoarthritis, osteoarthritis, and asthma. *Id*. She opined that Fife should be able to walk or stand for a full workday with some breaks for moderate dyspnea upon moderate exertion. *Id*. She added that he should be able to lift and carry objects weighing approximately five to ten pounds without limitations with his left shoulder, and less than five pounds with his right shoulder. *Id*. He also should be able to sit, hold a conversation, etc. without difficulty. *Id*. He had limited range of motion in his shoulders. *Id*.

On July 20, 2020, non-examining agency physician, Forrest Wright, M.D., reviewed the record and completed a physical residual functional capacity assessment for light work with limitations. (Tr. 75-77). He indicated that Fife was limited to occasional overhead reaching with the right shoulder, with the need to avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. *Id*.

On April 18, 2021, non-examining agency physician, Hollis Rogers, M.D., reviewed the

record and completed a physical residual functional capacity form finding that Fife was able to perform work at the light exertional level. (Tr. 87-88). He was able to perform postural activities on a frequent basis, with unlimited crouching, handling, fingering, and feeling. *Id*. He also needed to avoid even moderate exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, etc. *Id*.

On August 26, 2021, non-examining agency physician, Timothy Honigman, M.D., reviewed the record and affirmed the prior RFC by Dr. Rogers. (Tr. 96-98).

### b) **Applicable Regulations**

As Fife acknowledged in his brief, for claims filed on or after March 27, 2017, the Commissioner no longer affords "controlling weight" to the opinions of treating medical providers and will not defer or give any specific evidentiary weight to any medical opinion(s) from the claimant's medical sources. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a); *see also Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). Furthermore, the fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's medical issues are not primary or dispositive considerations in assessing the medical opinion. *See* 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). Rather, when determining the persuasiveness of a medical opinion, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).

"Supportability" focuses upon how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) . . ." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1). "Consistency" refers to how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

10

nonmedical sources in the claim . . ." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

Only when two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but "not exactly the same," will the Commissioner then articulate how she considered the "other most persuasive factors," such as the medical source's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship); the medical source's specialization; and other factors (including a medical source's familiarity with other evidence of the claim or an understanding of the agency's disability program's policies and evidentiary requirements). 20 C.F.R. §§ 404.1520c(b)(3)-(c) and 416.920c(b)(3)-(c). Otherwise, the Commissioner, may, but is not required to explain these additional factors. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).

    c)    **ALJ's Disposition of the Opinion Evidence**

In this case, the ALJ duly recited the treatment records, the claimant's testimony, and the medical opinion evidence. (Tr. 19-23). In so doing, he determined that the opinions of Drs. Sneed and Khan were "not wholly persuasive." *Id*. With regard to Dr. Sneed's opinion, he stated that,

> [i]t is unclear how long a "partial workday" is. Furthermore, the examination does not support this limitation. Additionally, during the examination, the claimant had full range of motion in the shoulders. He had no atrophy and strength was 5/5 in all muscle groups. Therefore, the limitation on lifting does not appear to be supported. Furthermore, as noted in more detail above, the opinion is not consistent with the record.

*Id*.

For Dr. Khan's opinion, he explained that,

> [t]he examination does not support the limitation with lifting given the claimant

11

>had 5/5 muscle strength and there is no medically determinable impairment with the left shoulder to support any limitations. Additionally, the range of motion in the cervical spine was normal; therefore, it does not appear that the cervical spine was causing any radiating issues with the left shoulder. Lastly, the record does not support that the claimant has moderate dyspnea as he usually had normal respiratory examination except for the consultive examinations. Therefore, the Administrative Law Judge finds that the above specific parts of the opinion are neither supported by nor consistent with the record as a whole.

*Id*.

In lieu of the more restrictive limitations recognized by Drs. Sneed and Khan, the ALJ endorsed the findings of the non-examining physicians, Drs. Rogers and Honigman, because he found that they were well-supported with specific references to the record and were generally consistent with the evidence. *Id*. In short, he deemed their opinions persuasive. *Id*.

### d) Fife's Argument(s)

Fife essentially argues that the ALJ's explanations for discounting the opinions of Drs. Sneed and Khan were not supported by the longitudinal medical evidence and/or were the product of a highly selective reading of and reference to the record. Stated differently, the ALJ failed to provide an accurate and logical bridge between the evidence and his findings as required to support meaningful judicial review.

Under the new regulations, the ALJ no longer is prohibited from assigning more weight to the findings of a non-examining physician over a contrary finding by a treating or examining physician. *Williams v. Kijakazi*, No. 23-30035, 2023 WL 5769415, at *2 (5th Cir. Sept. 6, 2023) (new regulations eliminate the old hierarchy of medical opinions and do away with the examining and non-examining physician dichotomy) (citation omitted).

Further, a relatively recent decision by the Fifth Circuit proves instructive in this case.

12

In *Webster v. Comm'r of Soc. Sec.*, like here, the plaintiff contested the ALJ's decision to favor the opinion of a non-examining physician over that of a physician who actually examined him. *Webster v. Comm'r of Soc. Sec.*, Civ. Action No. 19-0097, 2020 WL 760395, at *5 (N.D. Miss. Feb. 14, 2020), *aff'd sub nom. Webster v. Kijakazi*, 19 F.4th 715 (5th Cir. 2021). In addressing this argument, the district court stated that,

> [a]fter going through Dr. Small's [the examining physician] findings, the ALJ wrote that his opinion was not persuasive. He explained that "[w]hile it is supported by his own findings, it is not consistent with the claimant's medical history regarding his diagnoses, or with the claimant's longitudinal psychiatric treatment records which indicate that his PTSD is under better control with fewer breakthrough symptoms."
>
> After going over the opinions from the state agency physician, the ALJ found them persuasive and "supported by the evidence, at the time it was written." The ALJ continued: "It is also generally consistent with the record as a whole, which fails to demonstrate that the claimant has any persistent and overwhelming mental functional limitations stemming from his severe impairments."
>
> Accordingly, after examining the ALJ's opinion, the court finds substantial evidence supports his findings with respect to the medical opinions provided. The ALJ examined the opinions and looked to determine whether they were supported in the record and whether they were consistent with the record. The ALJ found the state agency physicians' opinions supported and consistent with the evidence, and thus, this court sees no reason to overturn that decision.

*Id*.

Webster appealed the unfavorable decision to the Fifth Circuit. *Id*. However, the court stated that,

> the ALJ considered both the consistency and supportability of Dr. Small's testimony in light of other medical opinions and evidence in the record, including Webster's hospital and VA treatment records. Ultimately, the ALJ determined that Dr. Small's testimony was only "supported" by his own findings and was inconsistent with Webster's medical history and longitudinal psychiatric treatment records indicating improvement to the symptoms caused by Webster's PTSD. Though the ALJ neither adopted the state agency report verbatim nor accepted the

13

testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards.

*Webster*, 19 F.4th at 719.

In this case, the ALJ's analysis of Drs. Sneed and Khan's opinions is no less detailed than what passed muster in *Webster*. The ALJ cited specific findings, which he deemed incompatible with some of the assigned limitations. He also noted that portions of the opinion were not supported by the record as a whole. In lieu of same, he opted to credit the findings of the agency physicians, which he deemed to be well-supported with specific references to the record and generally consistent with the evidence of record. (Tr. 23).[6] While the undersigned may not have weighed the evidence in the same manner as the ALJ, the instant review is not *de novo*. Furthermore, the court is unable to conclude that no reasonable mind could accept as adequate the ALJ's proffered rationale for discounting the findings of Drs. Sneed and Khan. *See Biestek, supra*.[7]

---

[6] Fife argues that the agency physicians did not have the benefit of reviewing of the findings of Drs. Sneed and Khan. Even so, the agency physicians reviewed the objective testing and treatment records which documented Fife's severe loss of disk height at C6-C7 and his ongoing right shoulder and neck pain, even after his initial shoulder surgery. Nonetheless, they opined that he was capable of work at the light exertional level.

[7] *See Ward v. Barnhart,* 192 Fed. App'x. 305, 308 (5th Cir. 2006) *Nugent v. Astrue,* 278 Fed. App'x. 423, 426 (5th Cir. 2008) (conflicting medical evidence supported ALJ's decision to place little weight on physician's opinion); *Richard ex rel. Z.N.F. v. Astrue*, 480 Fed. App'x. 773, 779 (5th Cir. 2012) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x. 196, 199 (5th Cir. 2010) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. 2011) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole."); *Webster v. Kijakazi,* 19 F.4th 715 (5th Cir. 2021) (ALJ considered both

In any event, even if the ALJ had failed to adequately "explain how [he] considered the supportability and consistency factors," remand is warranted only if the error was harmful, i.e., that the claimant was prejudiced thereby. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. 2023). An ALJ's error in failing to provide sufficient explanation of her consideration of the medical opinions does not require remand where (1) the record reflects that the ALJ recognized that the opinions contained more limiting restrictions but did not find them to be persuasive, and (2) the plaintiff "fails to show that if the ALJ had given further explanation, then she would have adopted them." *Id.*; *see also Walker v. Kijakazi*, No. 23-60116, 2023 WL 7443302, at *4 (5th Cir. Nov. 9, 2023) (harmless error where ALJ did not expressly mention "supportability" and "consistency," and plaintiff failed to show that further explanation by ALJ would haver resulted in ALJ changing her mind). Those circumstances are present here. Accordingly, any error was harmless.

## **Conclusion**

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the application paperwork, the hearing testimony, the medical records, and the expert opinion evidence. The evidence was not necessarily uniform, and, according to Fife, should have compelled a different result. However, conflicts in the evidence are for the

---

the consistency and supportability of the physician's testimony, but ultimately determined that physician's testimony was only "supported" by his own findings and was inconsistent with the claimant's medical history and longitudinal psychiatric treatment records); *Daigle v. Kijakazi*, No. 22-30721, 2023 WL 4501865 (5th Cir. July 12, 2023) (ALJ made credible choice finding physician's opinion unpersuasive in light of multiple other pieces of medical evidence).

15

Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs *against* the Commissioner's decision." *Newton, supra* (emphasis added).[8] That is not to say that the Commissioner's decision necessarily is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).[9]

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

---

[8] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue,* 400 Fed. App'x. 929 (5th Cir. 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*.

[9] Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen,* 864 F.2d 333, 334 (5th Cir. 2007).

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 15th day of November, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

17